UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA REYNOLDS et al., | |
| Plaintiffs, | Case No. 1:05-cv-527 |
| v. | Honorable Robert Holmes Bell |
| SUSANNA E. HARRIS-SPICER et al., | |
| Defendants. | |

# **OPINION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by Patricia Reynolds and her three sons - Phillip Demetrius Reynolds-Bey, Bobby Reynolds, Jr. and Christopher Louis Reynolds. Phillip Demetruis Reynolds-Bey is a state prisoner. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff Phillip Demetrius Reynolds-Bey has failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss his complaint without prejudice. In order to proceed with their action, Plaintiffs Patricia Reynolds, Bobby Reynolds, Jr. and Christopher Louis Reynolds must serve summons and complaint upon the Defendants within forty-five days of this opinion and order.[1]

---

[1] As non-prisoners, Plaintiffs Patricia Reynolds, Bobby Reynolds, Jr., and Christopher Louis Reynolds are not subject to the PLRA's exhaustion requirement. Moreover, because they paid their respective portions of the civil action filing fee, they are not subject to the screening provisions set forth in 28 U.S.C. § 1915(a).

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiffs filed their original complaint (docket #1) on August 5, 2005 and their amended complaint (docket #22) on September 8, 2005. In their fifty-three-page amended complaint, Plaintiffs sue the Michigan Department of Corrections (MDOC), twenty-four named employees of the MDOC, ten unknown John/Jane Doe employees of the MDOC, Michigan Attorney General Mike Cox, and the Michigan Attorney General's Office.

At the heart of Plaintiffs' complaint is their claim that Defendants engaged in an elaborate conspiracy to retaliate against them for exercising their First Amendment rights. The events giving rise to this action began in late April 2004, when Plaintiff Phillip Demetrius Reynolds-Bey (Plaintiff)[2] was transferred to the Carson City Correctional Facility (OTF). During the first week of May 2004, Plaintiff saw Corrections Officer Kingsberry. Plaintiff's allegations suggest that Kingsberry harbored animus toward Plaintiff as the result of a previous federal lawsuit that Plaintiff brought against various employees of the MDOC and the Chippewa Correctional Facility. *See Reynolds v. Smith et al.*, 2:01-cv-43 (W.D. Mich.) That case was terminated on August 26, 2003, when the Court granted summary judgment in favor of the defendants. Plaintiff shared his concerns about Officer Kingberry with his mother, Plaintiff Patricia Reynolds, during a phone conversation. On July 21, 2004, Patricia Reynolds sent a letter expressing her "outrage" over the placement of her son at the same facility as Officer Kingsberry to District Judge Quist and Magistrate Judge Greeley of this Court; U.S. Attorney for the Eastern District of Michigan Jeffrey Collins; MDOC Director

---

[2] "Plaintiff" refers to Plaintiff Phillip Demetrius Reynolds-Bey. The other individual Plaintiffs will be identified using their full names.

Patricia Caruso; Michigan Attorney General Mike Cox; Governor Jennifer Granholm; and Lieutenant Governor John Cherry.

On July 1, 2004, Defendant (unknown) Halfman, the Assistant Law Librarian, wrote a major misconduct report against Plaintiff for possession of a forged document. The document at issue was a Saginaw County Circuit Court form for a "writ of habeas corpus," in which the information filled in the blanks had been obliterated with white-out. On July 21, 2004, two days after Patricia Reynolds sent the letter concerning Officer Kingsberry, Defendant Harris-Spicer conducted a hearing on the misconduct charge. According to the Major Misconduct Hearing Report, Plaintiff claimed that he needed a blank writ form to send to the court and that it was not his intent to "forge" a document. In the evidence section of the report, Harris-Spicer related a conversation with Halfman in which Halfman "indicated that the Inspector told her that he felt the prisoner was trying to escape, based on telephone conversations and the attached form - trying to get a court date." Harris-Spicer concluded that Plaintiff altered the document and that "it was his intent to deceive the institution into believing that he had a court date, when he did not." While the misconduct hearing report does not mention Plaintiffs Patricia Reynolds, Bobby Reynolds, Jr. or Christopher Louis Reynolds, Plaintiff maintains that Harris-Spicer verbally accused his mother and family members of plotting to help him escape from prison.

Plaintiffs claim that Defendants fabricated the escape plot and accused them of engaging in criminal activity in retaliation for their previous federal litigation and the letter of complaint written by Patricia Reynolds on July 19, 2004. Plaintiffs further allege that Defendants furthered their campaign of retaliation and harassment by bringing false major misconduct charges against Plaintiff and improperly confiscating his legal property. For example, on September 2, 2004,

Defendants OTF Officer (unknown) Christiansen, OTF Resident Unit Manager Jim Dunigan and OTF Case Manager (unknown) Beecher conducted a search of Plaintiff's property. Defendants seized legal pleadings from Plaintiff's previous federal lawsuit, including a "Motion to Freeze Assets," a "Motion to Disqualify the State Attorney General's Office" and an affidavit of Plaintiff Patricia Reynolds that was filed in support of the motion to disqualify. Defendant Dunigan prepared a Notice of Intent to Conduct an Administrative Hearing with regard to the seized documents because they constituted prohibited Uniform Commercial Code (UCC) materials.[3] Dunigan also wrote a major misconduct against Plaintiff for insolence because of his attempts to place liens against the property of MDOC employees "were meant to be fraudulent, degrading, alarming, and consisting of harassing activity . . ." Defendant Beecher upheld the seizure of the documents, but Plaintiff was found not guilty of the insolence charge arising from the seized documents because he did not actually file any liens against MDOC employees.

Plaintiff sent numerous letters to MDOC officials concerning the events alleged in the complaint. In response, Defendant OTF Warden Kurt Jones sent a memorandum to Plaintiff on September 20, 2004, stating that any reference in Defendant Harris-Spicer's major misconduct hearing report to an escape plot was the result of a misunderstanding. According to Jones, both Defendant Halfman and Defendant Inspector (unknown) McMillian had denied making any statement about Plaintiff plotting an escape. Defendant Jones also had Plaintiff's phone conversations reviewed and found no evidence from those conversations that Plaintiff was planning an escape or that his mother or other family members intended to assist Plaintiff in an escape

---

[3]Under MDOC policy initiated in 2004, prisoners may not receive or possess materials regarding actions that can be taken under the UCC, with the exception of materials that set forth the statute or provide a scholarly legal analysis of the UCC. *See* MICH. DEP'T. OF CORR., Policy Directive 05.03.118, ¶ H(22) (effective June 6, 2005), superceding DOM 2005-4 and 2004-8 ("Fraudulent Activities Involving the Uniform Commercial Code").

attempt. In summary, Warden Jones stated that Plaintiff was not considered an escape risk, nor was it his belief that Plaintiff's mother or other family members were involved in an escape plot involving Plaintiff. The Warden also noted that if Plaintiff was considered an escape risk, he would have been transferred to a higher security facility.

Plaintiffs claim that Defendants' conduct violated their First, Fifth, Eighth and Fourteenth Amendment rights. They further allege that Defendants engaged in a conspiracy to discriminate again them based upon race in violation of 42 U.S.C. §§ 1981, 1985 and 1986. In addition, Plaintiffs claim that Defendants' conduct violated the Racketeering Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* Plaintiffs also assert numerous violations of state law including, libel, slander, intentional infliction of emotional distress and ethnic intimidation. For relief, they seek compensatory damages of $2.5 million and punitive damages of $21 million.

II.    Lack of exhaustion of available administrative remedies

Plaintiff has failed sufficiently to allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte. Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written

documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In addition, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The MDOC provides a three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement") (effective 12/19/03). Plaintiff wrote a Step I grievance (OTF 05-06-397-28F) on June 20, 2005, which specifically named all of the individual Defendants named in this action. Plaintiff filed his Step III appeal on August 16, 2005. Plaintiff signed the original complaint in this action on July 17, 2005 and it was received for filing in this Court on August 5, 2005. Plaintiff, therefore, filed his complaint before he filed his Step III grievance appeal. Because Plaintiff filed his complaint before he completed the grievance process, he fails to satisfy the exhaustion requirement. *See Freeman*, 196 F.3d at 645 ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.");

*accord Lutchey v. Wiley*, No. 98-3760, 1999 WL 645951, at *1 (6th Cir. Aug. 13, 1999) (dismissal of claim for lack of exhaustion was appropriate where prisoners failed to complete the review process before bringing their lawsuit); *Tucker v. McAninch*, No. 97-3880, 1998 WL 552940, at *2 (6th Cir. Aug. 13, 1998) (plaintiff failed to complete the administrative process when he had grieved and appealed to the warden, but had one more appeal remaining to the director of the department).

Plaintiff provides several other Step III responses to other grievances he filed at OTF in 2004 and 2005. However, he does not provide the Step I grievances, nor does he describe with specificity who and what he grieved. Without the corresponding Step I grievances, the Court is unable to determine whether Plaintiff exhausted his claims against the named Defendants. *See Curry*, 249 F.3d at 505; *Thomas*, 337 F.3d at 735; *Vandiver*, 2002 WL 31166925, at *2. Even if Plaintiff exhausted some of his claims, a civil rights action containing both exhausted and unexhausted claims must be dismissed for lack of total exhaustion. *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶ G(4). The Sixth Circuit held that an inmate cannot simply claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). However, even if the MDOC considers a subsequent grievance to be untimely, a prisoner who has presented a grievance through one complete round of the prison process will nevertheless be deemed to have exhausted available administrative remedies as required by 42 U.S.C. § 1997e(a). *See Thomas*, 337 F.3d at 733.

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Smeltzer v. Hook*, 235 F. Supp. 2d 736, 746 (W.D. Mich. 2002) (citing *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997)). Accordingly, the Court will dismiss Plaintiff Phillip Demetrius Reynolds-Bey's action without prejudice.

### III.    **Remaining Plaintiffs**

In order to proceed with their action, Plaintiffs Patricia Reynolds, Bobby Reynolds, Jr. and Christopher Louis Reynolds must serve summons and complaint upon each of the Defendants in accordance with FED. R. CIV. P. 4. The completed summons forms must be signed and sealed by the Clerk of the Court before they can be served on the Defendants. Pursuant to FED. R. CIV. P. 4(m), service of summons and complaint must be made within 120 days after the filing of the complaint. Because the 120-day time limit for service elapsed on November 2, 2005, the Court will grant Plaintiffs an extension of time, until forty-five days from the date of this opinion and order, to effectuate service upon Defendants.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff Phillip Demetrius Reynolds-Bey's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

An Order consistent with this Opinion will be entered.


Date:   November 8, 2005                    /s/ Robert Holmes Bell
                                                                              ROBERT HOLMES BELL
                                                                              CHIEF UNITED STATES DISTRICT  JUDGE